UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THERESA BORUSH,

                              Plaintiff,

            v.                                    3:05-CV-361
                                                  (J. Scullin)
COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

APPEARANCES:                      OF COUNSEL:

PETER A. GORTON, ESQ. for Plaintiff
WILLIAM H. PEASE, Assistant U.S. Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge


## REPORT-RECOMMENDATION

       This matter was referred to me for report and recommendation by the

Honorable Frederick J. Scullin, Jr., Senior United States District Judge,  pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance

with General Order 18.

## PROCEDURAL HISTORY

       Plaintiff filed applications for Disability Insurance Benefits and Supplemental

Security Income Benefits on October 6 and October 24, 2003.  (Administrative

Transcript ("T") at 41-43, 118-22).  The applications were denied initially and a

request was made for a hearing.  A hearing was held before an Administrative Law

Judge ("ALJ") on August 12, 2004.  (T. 158-81).  In a decision dated September 29, 2004, the ALJ found that plaintiff was not disabled.  (T. 13-22).  Plaintiff, proceeding *pro se*, appealed the ALJ's decision to the Appeals Council and submitted additional medical reports plus a lengthy hand-written letter.  (T. 138-59, 124-37).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 3, 2005.  (T. 4-6).

## CONTENTIONS

The plaintiff makes the following claims:

(1) The ALJ did not properly assess plaintiff's obesity and erred by failing to find that plaintiff's obesity was a severe impairment.  (Brief, p.3).

(2) The ALJ did not properly assess plaintiff's credibility.  (Brief, p.4).

(3) The ALJ failed to properly develop the record for the *pro se* plaintiff. (Brief, p. 9).

(4) The ALJ failed to give proper weight to the opinions of plaintiff's treating physicians.  (Brief, p. 9).

(5) The Appeals Council erred by failing to explain its evaluation of the new evidence, or the weight given to the new evidence.  (Brief, p. 10).

(6) The ALJ erred in finding that plaintiff had no non-exertional impairments and erred in failing to call a vocational expert.  (Brief, p.12).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.

**FACTS**

**A.    Non-Medical Evidence and Testimony**

Plaintiff, who was 35 years old at the time of the ALJ's decision (T. 161), had

a history of part-time work during the late 1990's (T. 46-49), and a few full-time jobs

between 2000 and 2002 (T. 53).  Plaintiff has a General Educational Development

Diploma ("G.E.D.").  Plaintiff's recent jobs were in the food service field, and doing

janitorial work where she frequently lifted twenty-five pounds and occasionally lifted

up to fifty pounds.  (T. 53, 165, 166).  Plaintiff stopped working during June 2003.

(T. 163).

At the hearing on August 12, 2004, plaintiff testified that she has constant pain

in her lower back and shoulders.  (T. 168).  Although she is able to drive to nearby

locations, she cannot sit for a long drive, cannot sit in the family's boat, and needs to

take frequent breaks on any car trips.  (T. 173-75).  She stated that she is able to use a

computer approximately three times per week for sessions of about thirty minutes

each.  (T. 176).  She is able to cook simple meals, but cannot stand for long periods

of time to wash dishes, and gets assistance from her children and husband with

laundry and household chores.  (T. 175-76).  Plaintiff stated that she has

fibromyalgia, which causes pain in her neck, shoulders, and upper back.  (T. 168).

She has more pain in her lower back, and stated that she has tried many medications

including Vioxx, Naprosyn, and Amitriptyline, that do not help in alleviating pain.

(T. 171).  According to plaintiff, although the Vioxx does not help her, she continues to use it and also takes the medication Zoloft.  (T. 171).  She stated that physical therapy did not help her back, and that spinal injections administered my Dr. Kanas also did not help.  (T. 172, 170).  Plaintiff stated that she does not have any social activities such as going to clubs or church activities.  Plaintiff does attend some of her children's sports and school activities, but she cannot sit or stand for the entire baseball game or school activity.  (T. 178-80).  Plaintiff testified that her normal weight range is between 280 and 327 pounds.  At the time of the hearing, she stated that she weighed 317 pounds.  (T. 162, 161).

**B.**   **Medical Evidence**

Plaintiff has received medical treatment from two main sources.  One source was the Osteopathic Family Practice located in Johnson City, which is part of the United Health Services Hospitals organization.  (T. 139-57).  The letterhead for this organization lists a director for an Osteopathic Family Practice Residency, and then lists many physicians who are part of the faculty for this program.  (T. 139). Plaintiff's two main treating medical professionals from this Family Practice were Dr. Karen Heister, D.O. (Doctor of Osteopathy) (T. 139-42), and Dr. Sherrod Hamlin, another Doctor of Osteopathy (T. 144, 145).  Plaintiff testified that she was being treated by Dr. Hamlin, who was an "intern" and has now graduated from this program.  (T. 169).  After Dr. Hamlin's departure, plaintiff's treating physician

became Dr. Karen Heister.  (T. 169).  It is unclear from the record whether Dr.

Hamlin and Dr. Heister were **_licensed_** at the time they treated plaintiff, or whether

they were operating in conjunction with other supervising licensed physicians who

ran the Family Practice program.  On two or three occasions, plaintiff was treated by

other individuals working for the Family Care Practice (Stradley and Dr. Buchanan).

(T. 151, 145, 149).

Plaintiff's other treating source was Dr. Ronnie Kanas of the Center for Pain

Relief.  (T. 95-97, 110-16).  The Family Care Program and Drs. Hamlin and Heister

provided plaintiff's overall care (T. 138-57), and Dr. Kanas from the Center for Pain

Relief administered plaintiff spinal injections to the S1 joint of plaintiff's spine.  (T.

110-16).

Plaintiff's treatment with Dr. Hamlin started in June 2003 when plaintiff

complained to Dr. Hamlin that her back pain was becoming worse, and she was

unable to do household chores such as cleaning and cooking dinner.  (T. 59).  Other

notes indicate that plaintiff reported that she cannot stand or walk for a long period

of time, cannot sit for a long time, and is unable to do any yard work.  (T. 66-70).

According to plaintiff, all physical activities increase her pain and her lower back

pain is constant.  (T. 73).  On March 20, 2003, plaintiff complained of low back pain,

which was "relieved with sleeping."  (T. 94).  Plaintiff stated that her back pain

became worse when standing or laying flat.  (T. 94).  Dr. Hamlin diagnosed low back

pain, which was possibly secondary to a soft tissue strain or secondary to plaintiff's morbid obesity.  Dr. Hamlin prescribed medications.  (T. 94).

On September 16, 2003, plaintiff was examined by Dr. Karen Heister.  Dr. Heister found acute pain with minimal palpation at plaintif's lumbar sacral juncture, and improvement in plaintiff's thoracic spine.  (T. 93).  On September 17, 2003, Dr. Hamlin examined plaintiff for plaintiff's complaints of low back pain, which was not improving.  Plaintiff told Dr. Hamlin that she had some relief from upper-body pain because of osteopathic manipulative therapy, but that she could not walk because of low back pain.  Dr. Hamlin did not find any spasms or tenderness on palpating plaintiff's lumbar spine.  (T. 92).  On September 17, 2003, an X-ray report showed minimal degenerative disc disease with no evidence of fractures, dislocations, or spondylothesis.  The X-rays of plaintiff's lumbar spine were otherwise normal.  (T. 157).  Dr. Hamlin's notes indicate that plaintiff stated that plaintiff was receiving no relief from physical therapy.  The notes do state that a physical therapist reported to Dr. Hamlin that "***plaintiff's symptoms were out of proportion to exam findings***." (emphasis added) (T. 88).  On October 10, 2003, Dr. Hamlin's notes indicate that plaintiff's sleep pattern had improved since beginning the medication Amitriptyline. (T. 156).  Dr. Hamlin wrote that plaintiff's physical therapy was to begin on October 17, 2003, and the doctor anticipated that "***over time her low back pain shall resolve***." (emphasis added) (T. 156).

A lengthy note from Dr. Hamlin on November 3, 2003 states that plaintiff reports decreased pain when sitting, but increased pain after standing for ten minutes. (T. 153).  Plaintiff reported her pain as 4 on a scale of 10, with the pain being much worse in the morning.  According to Dr. Hamlin's notes, plaintiff reported that any activity requiring standing increases her low back pain.  Dr. Hamlin's notes indicate that plaintiff had "hypersensitivity and ***questionable response to light palpation***." (emphasis added) (T. 153).  Dr. Hamlin found plaintiff's range of motion within function limits, negative straight leg raising tests, normal muscle strength and reflexes, and very poor posture.  (T. 153).  Other notes state that plaintiff cancelled four physical therapy appointments since she was waiting for a pain specialist before continuing physical therapy.

After November 2003, plaintiff began treatment with Dr. Ronnie Kanas.  (T. 95-97).  Plaintiff reported constant pain with all activities and no cessation of pain with physical therapy.  Dr. Kanas found normal deep tendon reflexes and a normal motor examination, but did find decreased range of motion in plaintiff's spine and tenderness over plaintiff's S1 spinal joint.  Dr. Kanas's impression was that plaintiff had bilateral sacroiliitis, myofacial pain syndrome, morbid obesity, and a minimal degeneration of plaintiff's lumbar spine.  (T. 96).  During December 2003 and January 2004, Dr. Kanas injected plaintiff's lower spine and reported that plaintiff had positive response to the medication Zanaflex.  (T. 110-16).

7

There does not appear to be any medical records for early 2004, and the records from the Family Practice Program begin again on April 16, 2004 when plaintiff complained about a knee problem.  (T. 151).  Plaintiff returned to the Family Practice Center on May 20 and again complained of lower back pain.  (T. 149). Plaintiff stated that several medications did not help her, although the notes indicate that she used those medications for only a brief time.  (T. 149).  Plaintiff complained of numbness and tingling with prolonged standing.  She also reported pain at a level of 6 or 8 on a scale of 1-10.  On examination, plaintiff's thoracic spine and lumbar spine were tender.  (T. 149).

On May 26, 2004, an MRI test was performed which showed minor right side bulging at level L5-S1, mild right side narrowing at level L5, and disc dessication at levels L4-5 and L5-S1, but no loss of disc space.  (T. 147).  Plaintiff returned to the Family Care Program on June 4 and June 7, 2004, again complaining of constant pain and no help from medications.  (T. 145, 144).  Plaintiff reported that she is not able to do laundry or other household chores.  (T. 144).  The notes indicate that Dr. Kanas diagnosed sacroiliitis and fibromyalgia.

On July 19, 2004, plaintiff visited Dr. Heister and had a long list of complaints including muscle pain from fibromyalgia and sacroiliitis, insomnia, difficulty with activities of daily living, and constant back pain.  (T. 141).  Plaintiff also complained that she cannot lift, cannot sit more than thirty minutes, cannot stand more than fifty

8

minutes, and cannot walk more than one half of a block.  Plaintiff stated that she

received help from her children with her daily chores and with getting dressed, and

that physical therapy and medications were not relieving the pain.  (T. 140).  Dr.

Heister assessed plaintiff's condition as "chronic pain [secondary to fibromyalgia

and sacroiliitis]."  Dr. Heister continued plaintiff's prescriptions for Vioxx, and

began the medication Zoloft.  (T. 140).

On October 18, 2004, Dr. Heister issued an opinion to the New York State

Office of Temporary Disability Assistance.  (T. 139).  In her opinion, she stated that

plaintiff has been a patient of the clinic since August 2003, that plaintiff has

"intractable pain," and that many medications did not help plaintiff's pain in her

shoulder and lumbar spine.  In addition, physical therapy did not help relieve

plaintiff's pain.  (T. 139).  Dr. Heister recited plaintiff's statements about plaintiff's

inability to perform activities of daily living and inability to stand, sit, and walk for

any length of time.  (T. 139).  Dr. Heister stated the following:

> I do not feel patient physically could hold a job at this point.  I am
> currently trying new medications for pain relief *which may allow
> plaintiff to return to work in the next two to four months*.

(emphasis added) (T. 139).

## DISCUSSION

## 1.    <u>Disability Standard</u>

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If she is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

## 2.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  A court's factual review of the Commissioner's final  decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

11

throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401

(1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

      "To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence

must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.

However, a reviewing court cannot substitute its interpretation of the administrative

record for that of the Commissioner if the record contains substantial support for the

ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  *See also*

*Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212

(1983).

## 3.   <u>New Evidence Submitted to the Appeals Council</u>

      Plaintiff argues (Brief 10-12) that the Appeals Council failed to comment on

the new evidence submitted to it, and failed to state what weight it was giving to the

new evidence.  Plaintiff did submit lengthy records from the Johnson City Family

Care Center (T. 138-57), plus a handwritten rebuttal to the ALJ's decision (T. 124-

138).  The decision of the Appeals Council simply states that it did not find any

reason to review the Adminstrative Law Judge's decision.  (T. 4).  The Appeals

Council denied plaintiff's request for review.  (T. 4).  Since the Appeals Council did

not find any reason to change the ALJ's decision, and did ***not*** issue its own decision,

it is not required to comment on the evidence submitted to it.  See *Perez v. Chater*,

77 F.3d 41 (2d Cir. 1996).  Plaintiff's argument is misplaced.  Plaintiff also argues

that the ALJ did not "develop the record" for plaintiff (Brief, p. 9) because the ALJ did not solicit opinion from physicians about plaintiff's medical issues.  Plaintiff did submit substantial additional records from her treating physicians and this issue is moot.  Also, the since this court is recommending remand, if the District Judge remands this case, additional records or opinions may be submitted.

4.    **Treating Physician**

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d), 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is ***not*** required to give the opinion controlling weight.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must, however, properly analyze the reasons that the report is rejected.  *Id.*  An ALJ may not arbitrarily substitute his own judgment for competent medical opinion.  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Plaintiff argues that Dr. Heister's opinion states that plaintiff was not able to work.  (Brief, p. 10).  While Dr. Heister did state that she believed plaintiff "could [not] hold a job at this point," she did ***not*** state that plaintiff was permanently disabled and qualified her opinion by stating that she believed new medications ***would allow plaintiff to return to work in the next two to four months.***  (T. 139). Clearly, Dr. Heister did ***not*** state that plaintiff was permanently disabled and unable

13

to work, and plaintiff's argument that Dr. Heister found plaintiff disabled is ***not supported by the record***.

While the ALJ discussed plaintiff's medical treatment at some length (T. 15-19), he did not specifically discuss the weight he was giving or not giving to the opinions of plaintiff's treating physician. This was error since the law in this Circuit requires that the treating physician's opinion be given greater weight if it is consistent with the medical evidence of record.

The ALJ ***did*** point out portions of the record that are inconsistent with plaintiff's complaints of constant debilitating pain (T. 17 minimal degenerative disc disease, minor disc bulge at L5-S1, T. 15 plaintiff's symptoms "out of proportion to physical examination findings), but did not specifically comment on the weight to be given to plaintiff's treating physicians.

The ALJ appears to have rendered a medical opinion regarding the diagnosis of sacroiliitis. The ALJ refers to sacroiliitis in his opinion (T. 17), he defines it, and states that the disease has "characteristic radiographic features includ[ing] joint space narrowing, sclerosis, and erosions of the ilium and sacra." (T. 17). The ALJ further states that there are laboratory or clinical findings to support this diagnosis. (T. 18). It is unclear where the information about sacroiliitis comes from, and the ALJ's statements that there are no findings in the record to support the diagnosis does not appear to be supported by substantial evidence in the record. Dr. Kanas made the diagnosis of sacroiliitis, and it is unclear how the ALJ can contradict that diagnosis simply by referring to some medical literature that is not cited in his opinion. This is

error by the ALJ.

## 5.   <u>Credibility - Pain</u>

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged...."  20 C.F.R. §§ 404.1529(a), 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  *Id.* §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light

15

of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ commented extensively on plaintiff's credibility, and his statements are generally supported by substantial evidence in the record. Plaintiff's testimony is at odds with reports of her treating physicians, who generally did ***not*** find strong evidence of disc disease or other objective findings which would account for plaintiff's claims of extreme pain. In addition, the record contains a statement that plaintiff's alleged symptoms were ***"out of proportion" to her examination findings*** by one of her physicians who was referring to a statement to a physical therapist. (T. 88). Dr. Hamlin's notes also state that plaintiff had a ***"questionable response to light palpation."*** (T. 153). Dr. Heister stated that she believed plaintiff would be ***able to work in two to four months***. (T. 139). That statement is at odds with plaintiff's claims that she is permanently disabled. These statements clearly support the ALJ's finding that plaintiff's allegations regarding her limitations are not totally credible. (T. 21).

Plaintiff wrote a lengthy handwritten rebuttal letter to the Appeals Council. (T. 124-38). In her letter, plaintiff claims that records from several treating

16

physicians, Dr. Hamlin and Dr. Kanas, contain errors, and that the ALJ's findings are erroneous since the ALJ does not include all the details of her testimony.  (T. 124-38).  While it is true that the ALJ was mistaken about plaintiff's "jumping from doctor to doctor" since Dr. Hamlin left the Family Care Program and plaintiff's care was taken over by Dr. Heister, it is ***unlikel***y that plaintiff's statements to ***several physicians on several occasions*** were erroneous.  While some of the ALJ's ***specific*** statements about plaintiff's credibility are not accurate, the record does contain evidence of plaintiff's ***inconsistent statements*** about her pain levels.  In addition, her treating physicians have raised questions about the veracity of her complaints.  (T. 153).

Plaintiff argues that the ALJ has made a "myriad of mistakes" in assessing plaintiff's credibility.  (Brief, p. 6).  While some of the ALJ's findings are in error, some are based on ***evaluations*** of plaintiff's inconsistent statements and plaintiff's exaggerations.  For example, the ALJ finds that plaintiff "seeks another treating physician" when told that obesity is the "primary source of her back pain."  (T. 19).  The record shows that plaintiff did ***not*** seek other physicians but continued treatment with the same Family Practice Group.  Plaintiff's testimony is not consistent with the record since plaintiff states that she is in pain "all the time" (T. 168), no medications helped (T. 170), and that surgery was ***not*** suggested (T. 170).  The record shows otherwise since plaintiff has told her physicians that the medication Skelaxin "***has helped significantly***," (T. 145), and that Amitriptyline improves her sleep (T. 156).  During October 2003, plaintiff reported to a physical therapist that "sitting ***decreases***

17

*[her] pain* . . ."  (T. 153).

During June 2004, Dr. Hamlin's notes and the nurse's notes both refer to discussions about plaintiff's "referral to a neurosurgeon."  (T. 144).  The notes state that plaintiff did "not want to see [a] neurosurgeon, stating definitely she does not want neurosurgery."  (T. 144).  Plaintiff's testimony *two months later* was that no one was talking to her "about surgery."  These are examples of clear inconsistencies in plaintiff's testimony which *support* the ALJ's finding about credibility.  The ALJ's finding about credibility is supported by substantial evidence in the record.

**6.     Residual Functional Capacity**

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545; 416.945. *See Martona v. Apfel*, 70 F. Supp. 2d 145 (N.D.N.Y. 1999)(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Verginio v. Apfel*, 1998 WL 743706 (N.D.N.Y. Oct. 23, 1998); *LaPorta v. Bowen*, 737 F. Supp. at 183.

It is unclear how the ALJ arrived at a residual functional capacity of "light work."  While the consultative examiner found that plaintiff had a full range of motion in plaintiff's shoulders, elbows, forearms, wrists, hips, and knees (T. 99, 100), and had good strength, no estimation of plaintiff's ability to sit was given.  The

qualifications of the "medical consultant" (T. 108) are unclear, and the opinion given by that "consultant" is entitled to little weight since it does ***not*** appear to be the opinion of a physician.

The ALJ's finding of "light work" is not supported by substantial evidence in the record.

7.    **Remand or Reversal**

Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger*, 516 F.2d 1282 (2d Cir. 1975).   Reversal is appropriate, however, when there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Serv.*, 705 F.2d 638, 644 (2d Cir. 1983) (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years; remand would likely result in further lengthening the "painfully slow process" of determining disability).  In this case, the ALJ's failure to properly analyze the evidence from plaintiff's treating physicians requires remand and not reversal since there is ***no persuasive proof*** of disability.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the this case be **REMANDED** for a proper

evaluation of the treating physician rule, and plaintiff's residual functional capacity.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to

file written objections to the foregoing report.  Such objections shall be filed with the

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d

85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 22, 2008

Hon. Gustave J. DiBianco
U.S. Magistrate Judge